Thomas WILLIAMS, Appellant

v.

Micah BLACKWELL; Charlene Daniels; and Terra McCann, Appellees

NO. 2014–CA–001728–MR

Court of Appeals of Kentucky.

RENDERED: FEBRUARY 19, 2016; 10:00 A.M.

Modified March 4, 2016

BRIEFS FOR APPELLANT: Stuart C. Peek, Smithland, Kentucky

BRIEF FOR APPELLEES: Jacob C. Walbourn, Frankfort, Kentucky

BRIEF OF THE AUDITOR OF PUBLIC ACCOUNTS AS AMICUS CURIAE IN SUPPORT OF APPELLEES: Robert E. McBeath, Frankfort, Kentucky

BEFORE: COMBS, THOMPSON, AND VANMETER, JUDGES.

## OPINION

**VANMETER, JUDGE:**

Thomas Williams appeals the Livingston Circuit Court's grant of summary judgment in favor of Micah Blackwell, Charlene Daniels, and Terra McCann (hereinafter "the auditors"), dismissing a claim of defamation in their individual capacity. For the following reasons, we affirm.

### I. Procedural and Factual Background

Williams served as the elected sheriff of Livingston County for more than a decade, and was in that office in 2010. Blackwell and McCann are field auditors for the Auditor of Public Accounts, serving in this capacity during the audit at issue; Daniels is a supervisor of Black and McCann, but did not review their work for the purposes of this audit. The auditors were responsible for the audit of the Livingston County Sheriff's Office for the calendar year ending December 31, 2009.

During the audit, a dispute arose between the auditors and Williams regarding a compensation arrangement between Williams and the Livingston Fiscal Court

involving Williams' lease of the fleet of police vehicles to the Livingston Fiscal Court with mileage reimbursement. At the conclusion of the investigative stage of the audit, the auditors scheduled the standard exit conference with Williams to go over their preliminary findings and proposed Auditor's Report.

After the exit conference, counsel for the auditors wrote a letter to Williams with a draft Audit Report and representation letter, soliciting Williams' input and signature, after which the auditors would finalize the report as required by law. The final Auditor's Report was published February 22, 2011, and was sent to Livingston Fiscal Court and to various media outlets in the state that have standing requests for such reports from the State Auditor. The Audit Report contained the following statement, which Williams alleges is defamatory:

> Due to the amount of compensation the Sheriff received and the material gap between those payments and actual expenses paid by the Sheriff, it appears that the current reimbursement policy is excessive and a poor use of public funds. Additionally, the possible profit that the Sheriff received from managing his office vehicle fleet could be interpreted to be in excess of his statutory maximum salary limit.... We will be referring this matter to the Kentucky Department of Revenue and the Internal Revenue Service for their review.

Following the publication, Williams filed this defamation case. By various orders, all other parties to this case have been dismissed, as have the claims against the auditors in their official capacities. The defamation claim against the auditor in their individual capacities is the only remaining claim. The trial court granted summary judgment in favor of the auditors, holding that the auditors' statements were privileged as opinion; the court also concluded that even without the pure opinion privilege, the auditors would be entitled to summary judgment under the alternative theory of qualified official immunity. This appeal follows.

## II. Standard of Review

CR [1] 56.03 provides that summary judgment is appropriate when no genuine issue of material fact exists, and the moving party is therefore entitled to judgment as a matter of law. Summary judgment may be granted when "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 483 (Ky.1991) (internal quotations omitted). "While the Court in *Steelvest* used the word 'impossible' in describing the strict standard for summary judgment, the Supreme Court later stated that that word was 'used in a practical sense, not in an absolute sense.'" *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky.App.2001). Whether summary judgment is appropriate is a legal question involving no factual findings, so a trial court's grant of summary judgment is reviewed *de novo*. *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 370–71 (Ky.2010).

## III. Arguments

Williams makes two arguments on appeal. First, he argues the trial court erred in granting summary judgment in favor of the auditors. He contends that a genuine issue of fact remains as to whether defamation of character occurred when the auditors released an audit containing language giving the appearance that they

---

1. Kentucky Rules of Civil Procedure.

were accusing him of fraud and tax evasion, thus "causing public hatred, contempt, and ridicule." Second, he argues that the trial court erred in finding the audit was in the course and scope of the duties of the field auditors pursuant to applicable federal and Kentucky statutes and guidelines.

### A. Defamation

First, Williams argues that the trial court erred in finding that the audit was not defamatory since it contained language which intimated that Williams was involved in fraud and tax evasion. Defamation is "the injury to the reputation of a person in public esteem." *Stringer v. Wal–Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky.2004) *overruled on other grounds by Toler v. Sud–Chemie, Inc.*, 458 S.W.3d 276 (Ky.2014) (internal quotation and citation omitted). A prima facie case of defamation requires proof of: (1) defamatory language, (2) about the plaintiff, (3) which is published, and (4) which causes injury to reputation." *Stringer*, 151 S.W.3d at 793. The alleged defamatory language must be "broadly construed as language that 'tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Id.* In order to recover damages as a public official for "a defamatory falsehood relating to his official conduct," one must prove "that the statement was made with 'actual malice'— that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964).

The Kentucky Supreme Court has laid out the Kentucky approach to defamation claims regarding statements of opinion in *Yancey v. Hamilton*, 786 S.W.2d 854 (Ky.1989). The Court adopted the Restatement (Second) of Torts, which states that "[a] defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory fact as the basis for the opinion." *Id.* at 857 (citing Restatement (Second) of Torts § 566 (1977)). This approach makes a key distinction between "pure opinion" and "mixed expressions of opinion."

Pure opinion, which is absolutely privileged, occurs where the commentator states the facts on which the opinion is based, or where both parties to the communication know or assume the exclusive facts on which the comment is clearly based. In contrast, the mixed type 'is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication.'

*Id.* at 857 (internal citations omitted).

The United States Supreme Court addressed the issue of whether opinion speech is actionable for defamation in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), and took a position consistent with the Kentucky Supreme court in *Yancey*. Instead of creating a dichotomy between "pure" and "mixed" opinion statements, the Supreme Court framed the issue as whether the alleged defamatory statement is provable as false. *Id.*, 497 U.S. at 19, 110 S.Ct. at 2706. Using this paradigm, in order for an allegedly defamatory statement to be actionable, the statement must be sufficiently factual to be provable false, or the statement must imply underlying facts which can be provable as false. *Id.*, 497 U.S. at 20, 110 S.Ct. at 2706.

Williams argues that all elements of defamation *per se* have been met, as the defamatory language was in the audit,

about him, published, and caused injury to his reputation. Williams further argues that he has met the higher standard for recovering damages as a public official since the auditors published the alleged defamatory statement with actual malice by "refusing to accept" additional "exculpatory" documentation of his expenses and reimbursement that showed there was not "a material gap" between his expenses and reimbursements. Williams contends that the statements in the audit report were not protected as privileged opinion because not all the facts were disclosed in the report.

The Auditor's Report, under the Comments and Recommendations Section, contained a section titled: "The Sherriff Should Receive Proper Tax Documents For Mileage Reimbursement Payments." This section set forth the alleged defamatory statement; however, when read in its entirety, the section first enumerated the auditors' analysis and accounting regarding this lease agreement. This section described the lease agreement between Williams and the county, and noted the following accounting:

> During calendar year 2009, the Livingston County Sheriff received $56,979 for the official use of these vehicles.... The Sheriff also received $1,547 in payment for miles driven on one county owned vehicle. These payments to the Sheriff totaled $58,344 for calendar year 2009, and corresponding gasoline receipts paid by the Sheriff only totaled $26,196, resulting in a difference of mileage payments over gas payments of $32,148. These amounts were not reported on the Sheriff's W2 nor was a 1099 issued for these payments.

The next paragraph in the report, which is the excerpt cited by Williams as defamatory, noted this "material gap" between payment and reimbursement, and the "possible profit ... [which] could be interpreted to be in excess of [the Sheriff's] statutory salary limit." That notation was followed by the recommendation

> that payments to individuals or businesses in excess of $600 be reported on a 1099 or other proper tax reporting document. We also recommend the Fiscal Court and County Attorney to review the current mileage reimbursement policy. We will be referring this matter to the Kentucky Department of Revenue and the Internal Revenue Service for their review.

The auditors argue that this section, taken in its entirety of context, was a pure opinion statement based upon the exact accounting of the gas reimbursements and profits on the fleet lease.[2]

This Audit Report very clearly articulated all of the facts upon which the opinion was based that a possible profit was created by the leasing agreement, which needed to be reported and filed with a 1099 form. In this case, a detailed review of the deposits and withdrawals from the "fee account" of the Livingston County Sheriff's Office was included in the report since this account was part of the finances of the Sheriff's Office. The alleged defamatory statement was merely a recommendation that the Livingston Fiscal Court file the appropriate 1099 form in light of the audit finding that the Sheriff was reimbursed more than $600. This statement is undoubtedly pure opinion and absolutely privileged. The lower court did not err in granting summary judgment after finding

---

**2.** The auditors first argue that Williams waived this issue of privilege by failing to raise the issue on appeal. *See Pers. Bd. v. Heck,* 725 S.W.2d 13, 18 (Ky.App.1986).

However, after reviewing the record, we believe that Williams did adequately preserve this issue for appeal, and will address it.

that the statements made in the Audit Report were privileged pure opinion, leaving no issue of fact remaining.

### B. Qualified Immunity

In the alternative, the auditors argue that summary judgment was proper under the theory of protection under qualified official immunity. In the summary judgment order, the trial court also acknowledged qualified official immunity would be an additional grounds for summary judgment in favor of the auditors. However, since we have already articulated our affirmation of the lower court based upon opinion privilege, we will not address the issue of qualified official immunity as well.

### C. Scope of the Audit

■ Lastly, Williams argues that the audit exceeded the scope and duties of the auditors and was conducted contrary to auditing guidelines. Therefore, he argues the alleged defamatory statement is improper and not protected by the pure opinion privilege.[3] To support this contention, Williams cites the Generally Accepted Government Auditing Standards (GAGAS), Generally Accepted Auditing Standards (GAAS), Audit Guide for County Fee Officials issued by the Auditor of Public Accounts (Commonwealth of Kentucky), and the IRS Fringe Benefit Guidelines. He argues that the auditors misconstrued the guidelines for an audit of the Sheriff's office, and should have never audited the expense receipts for the fleet of leased vehicles, which expanded into a "partial and incomplete personal audit" of Williams' "personal expenses."

The Auditor of Public Accounts is generally tasked "to provide for the independent auditing of the accounts, financial transactions, and performance of all spending agencies of the state through a disinterested auditor, who is entirely independent of the state administration whose affairs he is called upon to audit." KRS[4] 43.050(1).

> To determine whether any unauthorized, illegal, irregular, or unsafe handling or expenditure of revenue or other improper practice of financial administration has occurred and to assure that all proper items have been duly charged, taxed, and reported, the Auditor shall audit annually:
>
> 1. The funds contained in each county's budget; and
>
> 2. The books, accounts, and papers of all county clerks and sheriffs.

KRS 43.070(1)(a).

> The Auditor may investigate and examine into the conduct of all ... county officers who are authorized to receive, collect, or disburse any money for the state, or who manage or control any property belonging to the state or in which the state is interested, or who make estimates or records that are used as a basis by any state agency in the disbursement of public funds.

KRS 43.050(3).

In this case, the mileage reimbursements paid to Williams, as a publicly-elected Sheriff, by Livingston County, a county government, are clearly within the scope of the audit of the Sheriff's office, as is the Sheriff's maximum allowed salary. Therefore, since the lease agreement is within

---

**3.** Williams fails to articulate how an allegedly deficient audit would render the statements in the Audit Report ineligible for the pure opinion privilege. Even if the audit exceeded its scope, it still clearly enumerated the facts upon which the opinion was based, thereby still qualifying for the protection afforded

pure opinion speech. Further, we note that this case involves a defamation claim, not a claim for a negligent audit, so the reasonableness of the audit is irrelevant.

**4.** Kentucky Revised Statutes.

the scope of the audit, any facts underlying the auditors' opinions about this lease are also within scope, and are covered by the pure opinion privilege as discussed above.

### IV. Conclusion

We believe that the trial court properly granted summary judgment for the auditors as the statements contained in the Audit Report are constitutionally-protected pure opinion speech.

The order of the Livingston Circuit Court is affirmed.

ALL CONCUR.